**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| **STRATUS GROUP, INC., *et al.*[1]** | ) | **Case No. 08-11096 (JDW)** |
| **Debtors.** | ) | |
| **LEEDOM FINANCIAL SERVICES, LLC,** | ) | **Adversary Proceeding No. ____________** |
| **Plaintiff,** | ) | |
| **vs.** | ) | |
| **PATRICK EARL BASS and GLENN A. KIRBO,** | ) | |
| **Defendants.** | ) | |

**COMPLAINT FOR TEMPORARY RESTRAINING ORDER,**
**AND PRELIMINARY AND PERMANENT INJUNCTION**

Leedom Financial Services, LLC ("Leedom") files this adversary proceeding against the defendants, Patrick Earl Bass ("Bass") and Glenn A. Kirbo, seeking a temporary restraining order and a preliminary and permanent injunction and respectfully shows the Court the following:

**Jurisdiction and Venue**

1. On July 15, 2008, Stratus Group, Inc. ("Stratus"), Freeway Auto Credit, LLC ("FAC"), and Stratus Holdings Group of Florida, LLC, ("Stratus Florida", and together with

[1] In addition to Stratus Group, Inc., the following entities are debtors in possession in these jointly administered bankruptcy cases: Freeway Auto Credit, LLC and Stratus Holdings Group of Florida, LLC.

Stratus and FAC, the "Debtors") filed their respective voluntary petitions for relief (collectively, the "Cases") under chapter 11 of title 11 of the United States Code.

2. This Complaint commences an adversary proceeding seeking a temporary restraining order and preliminary and permanent injunction and, therefore, is governed by Bankruptcy Rule 7001 *et seq.*

3. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157(a).

4. Further, this is a core proceeding under 28 U.S.C. §157(b)(2)(A) since the Complaint involves "matters concerning the administration of the estate."

5. Venue is proper pursuant to 28 U.S.C. §1409 because the Complaint arises under and relates to the Cases.

6. Venue is proper under 28 U.S.C. § 1408 since the defendant, Patrick Earl Bass ("Bass") resides within the Middle District of Georgia at 2506 E. Doublegate Drive, Albany, Georgia 31721.

7. Venue is proper under 28 U.S.C. § 1408 since the defendant, Glenn A. Kirbo ("Kirbo") resides within the Middle District of Georgia and maintains a business at 2405 Westgate Drive, Albany, Georgia 31707.

**Background**

8. Leedom brings this adversary proceeding in its capacities as a creditor and an interest holder as to the Debtors' Cases, and as a shareholder of Stratus.

9. Stratus is owned by Leedom, Bass and Gino Fedeli ("Fedeli"). Their respective ownership percentages are 16%, 64% and 20%. Leedom obtained its ownership interest in Stratus as a result of a settlement Leedom entered into with Larry Bass on account of Leedom's

guarantee claim against Larry Bass under that certain Continuing Guaranty dated as of March 10, 2008.

10. Bass is Stratus' sole director and controlling shareholder.

11. As the sole director and controlling shareholder, Bass owes a fiduciary duty to creditors of the Debtors to maximize their recovery and to exercise his best efforts to achieve a successful reorganization.

12. To advance his personal interests ahead of the interests of creditors violates Bass' fiduciary duty as well as his obligations under Georgia statute.

13. Leedom and Stratus are parties to that certain Commitment to Participate in Installment Contracts, dated as of August 11, 2005 (as amended, the "Commitment"; together with the Revolving Loan Agreement, the "Loan Agreements").

14. Pursuant to the Commitment, Leedom has purchased participations in certain "Contracts" (as such term is defined in the Commitment) and made other financial accommodations available to Stratus.

15. In connection with the closing of and initial funding under the Commitment, the defendant Kirbo through his law firm issued a legal opinion in favor of Leedom and its sub participants on which they relied. The opinion, among other things, states that Leedom's and its sub participants' Commitment were properly perfected and are fully enforceable according to their terms.

16. Leedom, Stratus, Fedeli, Bass, and Larry W. Bass also are parties to a Revolving Loan Agreement, dated as of March 10, 2008 (as amended, the "Revolving Loan Agreement"), pursuant to which Leedom has made certain loans and financial accommodations available to Stratus.

17. Leedom and Stratus also are parties to an All Personal Property Security Agreement dated as of March 10, 2008 (the "Security Agreement"), pursuant to which Leedom has a security interest and lien upon certain collateral more particularly described in Section 2.01 thereof (collectively, the "Collateral").

18. Fedeli and Leedom also are parties to that certain Continuing Guaranty, dated as of March 10, 2008.

19. Bass and Leedom also are parties to that certain Guaranty Agreement, dated as of March 10, 2008, and that certain Continuing Guaranty, also dated as of March 10, 2008 (jointly, the "Bass Guarantees").

**Factual Allegations**

20. As the Debtors have admitted, prior to the filing of these Cases, Bass engaged in substantial self dealing and converting corporate assets by making payments to or on account of himself to the detriment of creditors' interests.

21. In addition, on information and belief, Bass through affiliated entities, primarily Sunbelt Acceptance, LLC ("Sunbelt") and Ocala Casualty Insurance Company ("Ocala Casualty"), siphoned off substantial amounts of funds from the Debtors to the detriment of the Debtors' creditors.

22. In May 2008, when the Debtors where strapped for cash, on information and belief, Bass directed that approximately $526,000 of company funds be withdrawn from the Debtors.

23. Further, Bass and other former senior officers of the Debtors submitted fraudulent and inaccurate borrowing requests to Leedom which permitted the Debtors to obtain from

Leedom greater proceeds than what otherwise would have been permitted under Leedom's documents and resulted in a significant over advance in Leedom's position.

24. On information and belief, the amount of false and fraudulent lease contracts submitted by Bass exceeded $12 million.

25. Bass' mismanagement, self-dealing and breaches of his fiduciary duties have continued since the filing of these Cases.

26. With the initiation of the Debtors' Chapter 11 Cases, as a condition to any agreement to allow the Debtors to use cash collateral, Leedom required that Bass be removed from the day-to-day management and control of the Debtors' business because of Bass' prepetition fraudulent and inappropriate activities. In connection therewith, Bass resigned as the President and Chief Executive Officer of the Debtors and appointed Brian S. McKee as the President and Chief Restructuring Officer of the Debtors.

27. The specific terms of the cash collateral orders entered in the Cases have restricted Bass' control of the ongoing day-to-day operations of the Debtors' businesses.

28. That Second Interim Order Authorizing Continued Use of Cash Collateral entered by this Court on September 2, 2008 (the "Second Interim Cash Collateral Order") at paragraph 14 specifically provided that:

> During the term and effect of this Order, Earl Bass shall not control, or otherwise direct, the ongoing day to day operations of the Debtors' business, including but not limited to, taking any action to terminate or remove the Debtors' currently designated President and Chief Restructuring officer and Chief Financial Officer.

29. At the hearings before this Court on Wednesday, September 3, 2008, counsel for the Debtors, counsel for the Official Committee of Unsecured Creditors (the "Committee") and counsel for Leedom advised the Court that the Committee had approved a term sheet (the "Term

Sheet") which was negotiated with, and supported by, the Debtors' current management and Leedom, and that the respective parties would be working together to present a reorganization plan to incorporate the Term Sheet. Counsel for the Debtors did advise the Court that the Debtors' sole director, Bass, did not support the Term Sheet. Counsel for the Debtors, the Committee and Leedom also advised the Court that agreement had been reached on continued use of cash collateral and that a third interim order allowing continued use of cash collateral would be submitted to the Court for its execution and entry.

30. On September 4, 2008 that certain Third Interim Order Authorizing Continued Use of Cash Collateral (the "Third Interim Cash Collateral Order") was submitted to this Court by counsel for Leedom, the form of which had been approved by counsel for the Debtors and the Committee. The terms of the Third Interim Cash Collateral Order continue the restrictions on Bass from not controlling or otherwise directing the Debtors' businesses and went further in that any action taken by him in that regard would be of no force and effect except upon further order of the Court following notice and hearing.

31. In violation of this Court's cash collateral orders, Bass, with the active participation and conspiracy of Kirbo, has undertaken, and is undertaking, efforts to assert influence and control over the Debtors' day-to-day operations and the Cases.

32. On Friday September 5, 2008 and prior to the expiration of the Second Interim Cash Collateral Order, Kirbo advised the Debtors' Chief Restructuring Officer that he had been appointed Chief Executive Officer for Stratus and its subsidiaries by Bass in Bass' capacity as sole director of Stratus. Kirbo further advised counsel for Leedom and one of Leedom's sub-participants of this appointment prior to 5:00 p.m. on Friday, September 5, 2008. This action by Bass, actively encouraged and supported by Kirbo, is in violation of the cash collateral orders

entered by this Court and the Third Interim Cash Collateral Order presented to this Court for execution and entry. The actions by Bass are a violation of his fiduciary duties to the Debtors' estates and represent a clear abuse of his authority, a right he abdicated prior to the filing of these Chapter 11 cases when he resigned as President and Chief Executive Officer of the Debtors and appointed Brian S. McKee as the Debtors' President and Chief Restructuring Officer.

33. Kirbo has joined in the violation of this Court's orders in that he has counseled and advised Bass to undertake the action attempting to appoint Kirbo as Chief Executive Officer of Stratus.

34. Even if the actions by Bass could stand, appointment of Kirbo as Chief Executive Officer is inappropriate in the circumstances of these Cases.

35. Kirbo cannot serve in any manner in these Chapter 11 cases as a fiduciary where he has an inordinate number of conflicts preventing him from in any way being independent and disinterested.

36. Kirbo has appeared in these Cases allegedly representing the creditor interests of Bithel Wall, Sunbelt and Fedeli. Kirbo, as counsel to Mr. Wall, has been privy to communications among the Committee which are privileged in nature. In such counsel capacity, Kirbo was the source of the unauthorized distribution to Bass of a memorandum prepared by counsel for the Committee concerning certain legal issues regarding Leedom's claims and interest in the Cases.

37. Kirbo is further conflicted and not disinterested and cannot be a fiduciary in any way in these Cases because, among other things:

a. Kirbo was and has been counsel to Bass, individually, and on information and belief, counseled Bass as to whether he should support the Term Sheet negotiated by the Debtors' creditors to whom Bass owes a fiduciary duty;

b. Kirbo or his firm were the attorneys that filed the organizational papers for Sunbelt, where the member/manager of Sunbelt was identified as Bass;

c. Kirbo, along with Bass, Fedeli and others own the controlling, if not all, ownership interests in Sunbelt; and

d. Fedeli, another of Kirbo's creditor clients, owns approximately 10% of the equity interest in the debtor Stratus.

38. The alleged claim of Kirbo's creditor client Sunbelt arises from where Sunbelt allegedly borrowed money from Wachovia Bank, N.A. ("Wachovia") and thereafter supposedly advanced those borrowings to Stratus. In connection with this asserted transaction, Kirbo, along with Fedeli, Bass and others are personally obligated to pay the underlying Wachovia debt as a result of personal guaranties issued by them in favor of Wachovia. Moreover, the claims of Sunbelt were not treated as debt claims in the debtor Stratus' audited financial statements, but were treated as equity contributions per the instructions of Bass to the company's auditors. Kirbo cannot serve as Chief Executive Officer of the Debtors where the claims of a client and entity in which he owns an interest, e.g., Sunbelt, may be disputed by the Debtors or creditors of the Debtors.

39. Kirbo and his law firm were counsel to Stratus at the closing of the Commitment and issued the legal opinion in favor of Leedom and its sub participants that they were fully and completely perfected in the debtor Stratus' assets and the terms of the Commitment were enforceable against Stratus in accordance with the terms. Leedom has put Kirbo and his firm on

notice that if there are losses because of challenges to Leedom's claims, claims will be made against Kirbo and his firm as a result of the issuance of the legal opinion.

40. Kirbo has also not disclosed that substantial sums of money distributed by the Debtors' pre-Chapter 11 were distributed to Kirbo and others in the form of "management fees" which were disguised payments on account of the alleged Sunbelt claim. Kirbo also has not disclosed that substantial distributions were made by the Debtors pre-Chapter 11 to Ocala Casualty, the company which former senior officers of Stratus advised Leedom was the company used by such former officers to "kite" checks to show liquidity of Stratus. In connection with Ocala Casualty, on information and belief, Kirbo is a director, an officer and an owner of Ocala Casualty, along with Fedeli and others.

41. The actions taken by Bass, joined in by Kirbo, on Friday, September 5, are in violation of this Court's cash collateral orders and constitute a breach of Bass' fiduciary duties owed to creditors of the Debtors' estate and in violation with Georgia law.

42. Kirbo is not disinterested and may not serve as an officer of the Debtors.

COUNT ONE

43. Paragraphs 1 through 42 of this Complaint are incorporated herein by reference to the same extent as if they had been repeated verbatim.

44. Bass and Kirbo should be temporarily restrained from implementing or otherwise effecting the appointment of Kirbo as Chief Executive Officer of Stratus and its companion Debtors.

45. Bass and Kirbo should be further temporarily restrained from anyway interfering with current management of the Debtors and management's directing to file a plan of

reorganization incorporating the Term Sheet supported by Leedom, the Committee and the Debtors' current management.

COUNT TWO

46. Paragraphs 1 through 45 of this Complaint are incorporated herein by reference to the same extent as if they had been repeated verbatim.

47. Bass and Kirbo should be preliminarily and permanently enjoined from implementing and otherwise effecting the appointment of Kirbo as Chief Executive Officer of Stratus and its companion Debtors.

48. Bass and Kirbo should be preliminarily and permanently enjoined from in anyway interfering with current management of the Debtors and management's directing the filing of a plan of reorganization incorporating the Term Sheet supported by Leedom, the Committee and the Debtors' current management.

[PRAYER FOR RELIEF AND SIGNATURES ON NEXT PAGE]

WHEREFORE, Leedom prays that, upon notice and hearing, this Court:

(1) issue a temporary restraining order against the defendants as requested herein and therein set a hearing for preliminary injunction as may be appropriate;

(2) issue a preliminary and permanent injunction with respect to defendants as requested herein; and

(3) provide for such other and further relief as this Court deems appropriate.

Dated: Atlanta, Georgia
September 8, 2008

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: */s/ Jesse H. Austin, III*

Jesse H. Austin, III
600 Peachtree Street
Suite 2400
Atlanta, Georgia 30308
(404) 815-2400
(404) 815-2424

ATTORNEYS FOR LEEDOM FINANCIAL SERVICES, LLC

# VERIFICATION and AFFIDAVIT

STATE OF FLORIDA
COUNTY OF SARASOTA

Before the undersigned officer, duly qualified to administer oaths, personally appears Chris Leedom, who upon being duly sworn, deposes and says:

(1) That I am Chris Leedom, President and Chief Executive Officer of Leedom Financial Services, LLC ("Leedom").

(2) This Affidavit and Verification is made on the basis of my own personal knowledge and for use in the above-referenced proceeding.

(3) As President and Chief Executive Officer of Leedom, I have the authority to make this Affidavit and Verification.

(4) Statements made and matters contained in the foregoing complaint of which I have personal knowledge are true and correct.

(5) As to those matters and information contained in the foregoing complaint of which I do not have personal knowledge, I reviewed the records and documents of Leedom relating to the above-styled action and that based upon such review, the statements and matters contained in the foregoing complaint are true and correct to the best of my knowledge and belief.

(6) Further Affiant sayeth not.

______________________ (SEAL)
CHRIS LEEDOM
President and Chief Executive Officer,
Leedom Financial Services, LLC

Sworn to and subscribed before me
this 8 day of September, 2008

______________________
Notary Public

MARY SHANNON O'REILLY
Notary Public - State of Florida
My Commission Expires Apr 12, 2009
Commission # DD 417925
Bonded By National Notary Assn.

My Commission expires:
04/12/09

LEGAL_US_E # 80803377.4